IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01656-LTB-MJW

EDWARD SCOTT HOUCHIN,

Plaintiff,

v.

ALFONSO R. JACKSON,

Defendant.

---

## RECOMMENDATIONS ON
## DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1) (Docket No. 7)
## and
## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) (Docket No. 8)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to an Order of Reference to United States Magistrate Judge issued by Chief Judge Lewis T. Babcock on August 23, 2006 (Docket No. 2).

Now before the court for report and recommendation are the defendant's two motions to dismiss (Docket Nos. 7 and 8), to which the pro se plaintiff filed a joint response. (Docket No. 10). The court has reviewed the motions, the response thereto, the court's file, and applicable statutes and case law. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the Complaint be dismissed.

>   Rule 12(b)(1):
>
>   empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
>   Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46

3

(1957).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Plaintiff's lengthy pro se Title VII Complaint (Docket No. 1), which is not a model of clarity, includes the following allegations. Plaintiff is a 55-year old white, non-Hispanic male who is a U.S. resident and citizen of Colorado. (Docket No. 1 at 4, ¶ 6). He is employed at the Denver Office of the Fair Housing and Equal Employment ("FHEO"), a division of the U.S. Department of Housing and Urban Development ("HUD"). On March 26, 2003, plaintiff applied for a Supervisory Equal Opportunity Specialist position, which was posted as a grade GS-15 position. Shortly thereafter, plaintiff received a letter from HUD Human Resources that stated that his application was not sent to the panel for review and was not under consideration because he was a GS-13 applying for a GS-15 position and did not have "one year of experience to the next lower grade in the Federal Service."

Based upon this failure to promote, the plaintiff raises three claims for relief.

4

First, he claims a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). He asserts that

> . . . he is the victim of illegal discrimination; hostile work environment; and reprisal/retaliation; a continuing pattern and practice of discrimination, hostile work environment, and reprisal/retaliation. Further Plaintiff alleges that Grasso [the candidate chosen for the position] was pre-selected for the position because she is a white female and the HUD Affirmative Employment Program (AEP) stated that white females are an under-represented EEO group in FHEO Management and HUD ODEEO guidelines dictate that FHEO hires white females, white females [sic], even when better-qualified white male candidates are present. Further, due to Plaintiff's previous EEO activity, Plaintiff was intentionally retaliated against by both HQ FHEO and Denver FHEO Officials.

(Docket No. 1 at 18, ¶ 42). Plaintiff further asserts that the

> position is the 21st time that Plaintiff applied for a promotion within FHEO but was denied and he believes that this is another incident of intentional discrimination and retaliation. The position in question was advertised in such a manner that he would automatically be disqualified as a candidate even though he had over 23 years experience as a fair housing professional; Plaintiff received numerous awards and letters of achievement; and that he has demonstrated significant leadership skills. Plaintiff believes the standard hiring practices and procedures were intentionally manufactured and manipulated in such a way as to exclude him as a candidate. The position in question was not advertised outside of HUD as a DEU position and the position was not advertised as a 14/15 position. The Agency intentionally deviated from utilizing standard hiring practices and procedures in order to cover up (pretext) its illegal discrimination. Normally, a position would have been advertised outside HUD as a DEU position and/or this particular position would be advertised as a GM 14/15 position. If the standard hiring practices and procedures had been adhered, Plaintiff would have easily met the minimal qualifications and his application would have been sent to the paneling process and he would have made the BQ list, just like he has done for the previous 20 positions that he have [sic] applied for in FHEO.

(Docket No. 1 at 22-23, ¶ 48).

Second, plaintiff alleges a violation of the Rehabilitation Act of 1973 based upon

5

his disability[1] and assisting others in exercising their civil rights.[2]  Finally, plaintiff claims Fifth Amendment violations.  More specifically, he asserts that

> HUD violated and continues to violate the equal protection clause of the Fifth Amendment.  HUD's unlawful and racially, gender and ethnicity based employment policies and practices relating to promotions deprives and continue to deprive plaintiff of his right to equal protection under the law.  Further, Defendant has, and continues to intentionally, and with malice, repeatedly violates [sic] the civil rights of Plaintiff.

(Docket No. 1 at 28).

In his Request for Relief, plaintiff seeks a promotion to the position of Supervisory Equal Opportunity Specialist, lost past and future pay in the amount of $1,074,647.00 that he allegedly would have been entitled to had he received the promotion, and $750,000 for pain and suffering.  (Docket No. 1 at 30).

Defendant seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  Defendant asserts that this court lacks subject matter jurisdiction over all but one of the plaintiff's claims because plaintiff failed to exhaust his administrative remedies and that plaintiff fails to allege sufficient facts to state a viable claim for failure to promote under Title VII.  This court recommends dismissal on these grounds.

**Exhaustion of Remedies**

"Exhaustion of administrative remedies is a jurisdictional prerequisite to

---

[1]According to the plaintiff, he had a climbing accident in August 1995 during which he "sustained a serious traumatic brain injury (TBI), post traumatic stress disorder (PTSD) partial loss of motion in right wrist, broken and sprained ankles which inhibit his walking and balance, and other symptoms commonly associated with TBI such as sensitivity to light, etc."  (Docket No. 1 at 26, ¶ 10).

[2]Plaintiff states that he is the founder and officer of a group called Disabled in Government.

instituting a Title VII action in federal court." <u>Mack v. Gonzales</u>, 2007 WL 196791, *1 (D. Colo. Jan. 23, 2007).  The Rehabilitation Act encompasses Title VII's exhaustion requirement.  <u>Woodman v. Runyon</u>, 132 F.3d 1330, 1341 (10th Cir. 1997); <u>Uhey v. Potter</u>, 2007 WL 135616 (D. Colo. Jan. 16, 2007).  "Special regulations govern the filing of discrimination claims by federal government employees."  <u>Mack v. Gonzales</u>, 2007 WL 196791, *1 (D. Colo. Jan. 23, 2007).  <u>See</u> 29 C.F.R. § 1614.

This court agrees with the defendant that the court lacks jurisdiction over the following claims because the plaintiff failed to exhaust his administrative remedies at the agency level: (1) hostile work environment and/or harassment; (2) disparate impact; (3) pattern and practice of discrimination; (4) pattern and practice of retaliation; (5) pattern and practice of hostile work environment; (6) pattern and practice of harassment; and (7) failure to promote on the basis of disability.

With regard to the failure to promote on the basis of disability claim, defendant correctly points out that while plaintiff raised this claim in his formal EEO complaint dated August 18, 2003 (Docket No. 7-12), when he filed his appeal to the EEOC, he did not challenge the administrative judge's ("AJ") decision to deny the claim.  More specifically, defendant points out the following.  On August 12, 2005, the AJ granted HUD's motion for summary judgment, and his findings included a determination that the plaintiff was not a qualified individual with a disability.  (Docket No. 7-18 at 7).  On September 1, 2005, HUD issued a Final Order that fully implemented the AJ's decision, which, *inter alia*, granted summary judgment on the disability claim.  (Docket No. 7-19 at 1).  That Final Order specifically stated that plaintiff had 30 days from receipt in

which to file an appeal with the EEOC or 90 days from receipt to file a civil action in the United States District Court.  (Docket No. 7-19).  Plaintiff elected the former avenue, and through counsel he filed his Appellant's Statement in Support of Appeal on November 10, 2005.  (Docket No. 7-20).  In that Statement, however, plaintiff did not address the AJ's ruling denying plaintiff's disability claim.  Instead, plaintiff merely addressed the issues of the time-in-grade requirement and whether plaintiff was qualified for the position at issue.  He never addressed his alleged disability.  Therefore, plaintiff abandoned that claim by not raising it on appeal and thus has not exhausted the claim.  Therefore, that claim should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  See French v. Henderson, 4 Fed.Appx. 257, (6th Cir. 2001) (Plaintiff "may not obtain district court review of the demotion claim because he did not appeal the EEOC's dismissal of such claim . . . ."); Ross v. England, 2007 WL 445963, * (W.D. Washington Feb. 7, 2007) ("When a plaintiff cuts the administrative process short in a Title VII claim, either through withdrawal or abandonment, the claimant fails to exhaust his administrative remedies and may not seek subsequent redress from the courts."); Striss v. Potter, 2006 WL 2827681, *7 (D. S.C. Sept. 28, 2006) ("The plaintiff expressly abandoned her 'retaliatory harassment, race, and color' claims at the administrative level, when she specifically 'drop[ped]' them on appeal to the EEOC Office of Federal Operations . . . Because the plaintiff did not appeal these claims, the Court may not hear them now.");

Defendant also correctly asserts that plaintiff's claims for hostile work environment and/or harassment, disparate impact, and pattern and practice of

8

discrimination should also be dismissed because they were never investigated or adjudicated at the agency level prior to the plaintiff's assertion of them here, and plaintiff did not appeal the AJ's July 21, 2005, Order upholding HUD's dismissal of these claims.  More specifically, defendant points out the following.  On November 3, 2003, the EEO sent plaintiff a Notice of Acceptance with respect to his August 18, 2003, formal EEO complaint, advising him of the claims it was accepting for investigation.  (Docket No. 7-13).  That Notice of Acceptance did <u>not</u> include a hostile work environment or harassment claim, disparate impact claim, or a pattern and practice of discrimination claim.  (Docket No. 7-13).  Instead, it stated that the following claims were accepted for investigation:

> Whether you were subjected to discrimination because of your race (White), color (white), sex (male), national origin (non-Hispanic), disability (traumatic brain injury, post traumatic stress disorder, partial loss of motion in right wrist, walking), age (52), and in reprisal for previous participation in EEO activities, when the Human Resources Office in Fort Worth, Texas, did not place your name on the best qualified list for the position of Supervisory Equal Employment Opportunity Specialist, GS-360-15, under vacancy announcement Number 06-MSR-2003-0002, located in the Denver Regional Office of Fair Housing and Equal Opportunity.   You learned on or about April 5, 2003, that you were not among those on the Best Qualified List.

(Docket No. 7-13 at 1).  Plaintiff responded to that Notice by a letter dated November 15, 2003, in which he stated that the claims that were accepted did not accurately address the allegations of his complaint, and he thus listed his claims, including his allegation that HUD's Affirmative Employment Program ("AEP") had a disparate impact against him because he is a white, non-Hispanic male; HUD's non-selection of plaintiff for the position at issue was part of a pattern and practice of discrimination against him

because he is a white, non-Hispanic male; and the selection of the position at issue was part of an on-going process to force plaintiff to retire, and plaintiff has been subjected to a hostile work environment by watching less qualified minorities receive promotions.  (Docket No. 7-13).

The Agency, however, subsequently notified the plaintiff of its determination to partially dismiss his additional claims.  (Docket No. 7-15).  In his July 21, 2005, Order, the AJ upheld the partial dismissal.  (Docket No. 7-16).  Significantly, plaintiff never appealed the AJ's July 21, 2005, determination.  While plaintiff appealed the AJ's Summary Judgment Decision dated August 12, 2005, to the EEOC (Docket No. 7-20), he never appealed the AJ's July 21, 2005, Order.  Therefore, plaintiff did not exhaust these claims, and they should thus be dismissed for lack of jurisdiction.

Finally, defendant correctly notes that the plaintiff never raised at the administrative level his claims for pattern and practice of retaliation, pattern and practice of harassment, or pattern and practice of hostile work environment.  Thus, these claims should also be dismissed for lack of jurisdiction.

**Failure to State a Claim**

"A plaintiff alleging a failure-to-promote claim must initially establish a *prima facie* case, demonstrating that: (1) []he was a member of a protected class; (2) []he applied for and was qualified for the position; (3) despite being qualified []he was rejected; and (4) after []he was rejected, the position was filled."  Hubbard v. United Service Auto. Ass'n, 2007 WL 437676, *6 (D. Colo. Feb. 5, 2007).  See Cross v. The Home Depot, 390 F.3d 1283, 1286 (10th Cir. 2004).  A *prima facie* case, however,

requires a stronger showing in a reverse discrimination case. Hubbard, 2007 WL 437676, *6. "The Tenth Circuit has held that a plaintiff alleging reverse discrimination 'must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority,' or, alternatively, may produce facts 'sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.'" Id. (quoting Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1201 (10th Cir. 2006)).

Defendant correctly argues in its motion to dismiss pursuant to Rule 12(b)(6) that the court must dismiss plaintiff's Title VII claim of discrimination on the basis of his race, color, sex, national origin, and retaliation by failing to promote (plaintiff's only exhausted claim) because the facts plead in the Complaint establish that the plaintiff cannot meet the second element stated above, namely, that he was "qualified" for a promotion to the Supervisory Equal Opportunity Specialist position. Defendant notes that as alleged in the Complaint, plaintiff was a GS-13 in March 2003 when he applied for the GS-15 position, and in his application for the position, he acknowledged that he had been promoted to that GS-13 position on September 22, 2002.[3] (Docket No. 1 at 6, ¶ 16; Docket No. 1, Ex. 2, at 1). However, pursuant to 5 C.F.R. § 300.604, federal employees must meet certain time-in-grade requirements in order to be eligible for advancement to positions with grades of GS-12 or higher: "(a) Advancement to

---

[3]Plaintiff's promotion to that position was part of a Settlement Agreement entered into by plaintiff and HUD to resolve numerous other complaints plaintiff had filed against HUD concerning previous non-selections for promotions.

11

positions at GS-12 and above. Candidates for advancement to a position at GS-12 and above must have completed a minimum of 52 weeks in positions no more than one grade lower (or equivalent) than the position to be filled." 5 C.F.R. § 300.604. Therefore, as correctly asserted by the defendant, the plaintiff needed to have completed a minimum of 52 weeks in a GS-14 position or equivalent in order to be qualified to apply for the Supervisory Equal Opportunity Specialist position, but instead he had held a GS-13 position for just about six months at the time he applied and had never served at a GS-14 level. Therefore, he was not "qualified" for the position, nor would he have been qualified for the position even if it had been posted as a GS-14 rather than a GS-15. See Taylor v. Small, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (In Title VII action, plaintiff had spent less than eight months as a GS-11 employee when she requested a promotion to GS-12. "The district court therefore properly found [plaintiff] was not eligible for promotion at the time she sought it."); Jarmon v. Powell, 208 F. Supp.2d 21, 29-30 (D. Columbia 2002) (At the time of posting of the GS-15 position, Title VII plaintiff had been in the GS-14 position for only one month. Court found that "plaintiff's allegations that the GS-15 vacancy announcement was tailored to exclude him cannot sustain a claim of discrimination" and failed as a matter of law.).

**Fifth Amendment Claim**

Although not raised by the defendant, it is well-established that the plaintiff's Fifth Amendment claim also "fails . . . because the Supreme Court has clearly held that Title VII provides the exclusive remedy for discrimination claims in federal employment." Ford v. West, 222 F.3d 767, 773 (10th Cir. 2000) (citing Brown v.

12

General Servs. Admin., 425 U.S. 820, 835 (1976); Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997)).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant's Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Docket No. 7) be granted. It is further

**RECOMMENDED** that Defendant's Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 8) be granted.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:　　　March 27, 2007　　　　　　　　　s/ Michael J. Watanabe
　　　　　　Denver, Colorado　　　　　　　　　Michael J. Watanabe
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge